**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **REGAN DAWS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 16-1292-JWL** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, ultimately alleging disability beginning March 16, 2011.  (R. 13, 50).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He claims that the ALJ erred in the credibility determination.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The Act provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920;[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

---

[2]The ALJ's decision in this case was issued October 22, 2014. (R. 26). Therefore, the regulation citations in this opinion are to the regulations in effect at the time of that decision, 20 C.F.R., Part 404 (2014), unless otherwise indicated.

3

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's credibility determination.

## II.  Discussion

Plaintiff argues that "[t]he ALJ was wrong" in finding that Plaintiff's allegations of limitations resulting from his impairments were "only partially credible." (Pl. Br. 8).[3] This is so, in Plaintiff's opinion because unremarkable objective testing does not undermine his allegations, because a proper consideration of "the nature and frequency of [his] treatment supports his credibility," id. at 9, because his daily activities as reported both by him and by a friend support his credibility, id. at 10, because the ALJ's determination that Plaintiff's pain was controlled by diet, medication, and abstinence from alcohol was based on a misunderstanding of the record, and because "the apparent inconsistencies the ALJ found do not detract from [Plaintiff's] credibility." Id. at 11-12. The Commissioner argues that the ALJ's credibility determination was reasonable and

---

[3]The pages in Plaintiff's briefs are not numbered, so the court has used the numbers provided by the software it uses to read the .pdf file from the court's CM/ECF system.

supported by the record evidence, and that Plaintiff merely asks the court to reweigh the evidence.  (Comm'r Br. 3).  She argues that Plaintiff admits the objective evidence does not support his complaints of pain, and "has not identified any objective evidence demonstrating that he experienced functional limitations" from his impairments or complaints.  Id. at 4-5.  She points out that an ALJ must consider the objective evidence, but acknowledges that he may not rely solely on objective evidence to discount the credibility of Plaintiff's allegations.  Id. at 5.  She argues that the ALJ considered and discussed Plaintiff's treatment history, reported activities of daily living, inconsistencies in Plaintiff's reports, and his treatment.  Id. at 6-7.

### A.  Standard for a Credibility Determination

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in

the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  But, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

**B.   Analysis**

As the Commissioner argues, much of Plaintiff's credibility argument is a request for the court to reweigh the evidence and substitute its judgment on credibility for that of the ALJ.  (Pl. Br. 8) (Asserting the ALJ's finding of partial credibility "was wrong."); id. at 11 (providing a different view for evidence relied upon by the ALJ); id. at 13 (In "relying heavily on diagnostic testing to discount [Plaintiff's] allegations of pain" . . . "the ALJ did not give [Plaintiff's] failed attempts to control his pain, the multiple hospitalizations, and evidence that [Plaintiff's] activities of daily living [sic] the weight it deserved."); (Pl. Reply 1) ("[Plaintiff] objects to the ALJ's interpretation of the

evidence."). To the extent of this request, the court is without authority to reweigh the evidence or substitute its judgment for that of the ALJ. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172. While certain evidence may be viewed in a manner supporting Plaintiff's claims, the question before the court is whether the record evidence, viewed as a whole, will support the ALJ's credibility determination. The court finds it does. Moreover, Plaintiff develops no arguments of error other than the ALJ's credibility determination–an issue for which the court's review is perhaps most deferential.

The court acknowledges that this is certainly a thorny issue, that no treating physician indicated Plaintiff's allegations of pain are incredible, and that pain of the severity alleged by Plaintiff, if found to be credible, would require a finding of disability. But, there is no objective test for the severity of pain and sensitivity to the "same" pain varies among individuals. It was partly for these reasons that the Commissioner propagated regulations regarding the consideration of a claimant's allegation of symptoms, 20 C.F.R. §§ 404.1529, 416.929, and the Tenth Circuit recognized the three-part framework for evaluating credibility. Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). But, the standard the ALJ stated he applied is correct (R. 17-18), the court's general practice is to take a lower tribunal at its word when it declares that it has considered a matter; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004); and Plaintiff does not argue that the incorrect legal standard was applied. Having applied the correct legal standard, the ALJ is not required to accept Plaintiff's allegations regarding his pain at face value. Moreover, the ALJ acknowledged Plaintiff's testimony and other

allegations in the decision at issue (R. 18-19), his numerous hospital admissions related to his abdominal pain, and the extensive work-up he has undergone. (R. 19-22).

The court's review begins with the ALJ's decision, for the question is whether that decision is supported by the record evidence, not whether the evidence might support a different view presented by Plaintiff. The ALJ discounted Plaintiff's credibility because the medical records do not establish the limitations alleged, treatment and medication have resulted in improvement in his condition, physical examinations have not revealed significant abnormalities, and abdominal radiographs are essentially unremarkable. (R. 22). He found Plaintiff's pancreatic exacerbations are controlled with diet, medication, and abstinence from alcohol, that Plaintiff worked during the alleged period of disability, that he told a healthcare provider that he was working on his MBA, and he denied problems with memory and concentration or side effects from medication. (R. 23).

Plaintiff argues that "[t]he absence of diagnostic abnormalities does not undermine" his allegations, but he ignores the fact that the invasive medical procedures performed and cited by Plaintiff (the abdominal radiographs the ALJ described as "essentially unremarkable") revealed no abnormalities--"a normal UGI tract," "[t]he entire opacified area was normal. There was no evidence of chronic pancreatitis in the entire opacified area," "[t]he panc orifice appeared nicely patent," and a "normal limited pancreatogram." (R. 358). The "[a]lmost certain chronic pancreatitis with acute flares" (R. 360) which Plaintiff alleges Dr. Lehman diagnosed, was actually Dr. Lehman's impression provided in a letter to Dr. Jeffries on November 15, 2012 after reviewing

Plaintiff's history, examination, and records, and one day <u>before</u> the ERCP procedure done by Dr. Lehman, which yielded the findings quoted above.

Plaintiff argues the finding that pancreatic exacerbations were controlled was based on the ALJ's misunderstanding that Dr. Fisher refused to perform another ERCP because Plaintiff's condition had improved, whereas she really refused to perform an ERCP because at an earlier ERCP Plaintiff coded in the hospital during recovery. (Pl. Br. 11). The misunderstanding is Plaintiff's. While Plaintiff is correct that he coded and was kept in the hospital because of "[r]espiratory failure secondary to increased narcotic use" (R. 598), the decision does not state that the physician's refusal to perform another ERCP indicated improvement in Plaintiff's condition, and the court does not read it that way. (R. 23); <u>see also</u> (R. 22) ("By November 25, 2013 claimant was reporting Dr. Jafri would not perform anymore ERCP's unless absolutely necessary, and that there was nothing else he could do for claimant"). Apparently because the ALJ called the physician "claimant's treating physician," Plaintiff understands him to mean Dr. Fisher, but Dr. Jafri was Plaintiff's treating physician with regard to ERCP procedures, and even Dr. Fisher's treatment note makes clear that Plaintiff reported "that Dr. Jafri told him would [sic] not do anymore ERCP's unless absolutely necessary." (R. 653).

Plaintiff's argument regarding inconsistencies is likewise unavailing. He argues that the ALJ should not have used Plaintiff's report that he was completing his MBA against him because "there is no evidence he completed the program or mention of this action in any other record." (Pl. Br. 11). Plaintiff properly does not argue that the ALJ's

9

assertion he was working on an MBA is incorrect, because as he admits, he told Dr. King he was completing his MBA.  (R. 590).  Plaintiff points to no requirement that an inconsistency must appear at least twice in the record to be relied upon by the ALJ.  And the fact that he was pursuing the program suggests he did not believe he was as limited as he alleges--whether he completed the program or not.  With regard to his work in the first quarter of 2013, Plaintiff points to evidence tending to show that he was admitted to the hospital overnight on March 30, 2013 (R. 597-98), and argues that is why this work ended, and the work should not have been held against him.  (Pl. Br. 11).  However, there is no evidence that the overnight hospitalization <u>caused</u> his employment to end, and neither the court nor the ALJ may speculate in that regard.  While Plaintiff provides plausible alternative explanations for the evidence relied upon by the ALJ, the ALJ was not required to reach the conclusions suggested by Plaintiff, and the record evidence supports the ALJ's understanding.  Giving the credibility determination due deference, Plaintiff has shown no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 18th  day of July 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

10